UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARRY FOX,

    Plaintiff,                                       Hon. John Corbett O'Meara

v.

                                                    Case No. 07-13622

RIVERDEEP, INC., *et al.*,

    Defendants.

_____/

## OPINION AND ORDER

Before the court are seven motions, which have been fully briefed: (1) Riverdeep, Inc.'s renewed motion for summary judgment, filed August 12, 2008; (2) Plaintiff Harry Fox's motion for leave to file an amended complaint, filed August 15, 2008; (3) Plaintiff's motion to disqualify Miller Canfield, filed August 25, 2008; (4) Plaintiff's motion to extend discovery by thirty days, filed August 25, 2008; (5) Plaintiff's motion for finding spoliation of evidence, filed September 5, 2008; (6) Riverdeep's motion to strike hearsay statements, filed September 19, 2008; and (7) Defendants Barbara Cash and C*Ding's motion for summary judgment, filed October 8, 2008. The court heard oral argument on November 20, 2008.

## BACKGROUND FACTS

Plaintiff Harry Fox filed this case on August 28, 2007, alleging copyright infringement and breach of contract against Riverdeep, Inc., LLC, Barbara Cash, and C*Ding, LLC. Fox alleges that Defendants infringed his copyright by licensing and distributing a computer software program called Pathways through Jerusalem – a "multimedia tour through the historic city of Jerusalem." Pathways was registered in the U.S. Copyright Office in February 1996 by The

Learning Company, Inc., formerly known as SoftKey Multimedia, Inc. The Learning Company assigned its rights to the Pathways work to Fox in 1997. Fox did not record the transfer with the Copyright Office until July 2004.

In September 2001, Riverdeep acquired substantially all of the Learning Company's educational software and intellectual property assets from Gores Technology Group under an asset purchase agreement. On February 16, 2004, Riverdeep entered into a license agreement with Barbara Cash, under which Riverdeep licensed to Cash the rights to manufacture and distribute certain software, including Pathways. Riverdeep asserts that it mistakenly believed that it owned the rights to Pathways at the time, although it has not explained how this mistake was made. Riverdeep acknowledges that it never owned the rights to Pathways.

Cash is a retired lawyer living in Southfield, Michigan. She was aware of Pathways because she had previously purchased it as the "perfect bar mitzvah gift." In 2003, she learned that Pathways was being discontinued. She decided to license the product and sell it herself. Cash contacted her friend Jeffrey Richardson of Wall Street Productions to assist her in negotiating a license. Richardson is a lawyer and Wall Street is a software production and marketing company based in Southfield.

In his research regarding the owner of Pathways, Richardson ultimately contacted Riverdeep. (Richardson does not have a good memory about the chronology events leading up to the negotiation of the license.) At some point, the name Harry Fox "came up" during negotiations. In an email, Richardson wrote that "I was told by Broderbund/Riverdeep that Harry Fox currently holds the rights for this product." Richardson testified that he thought "Harry Fox" referred to the Harry Fox Agency, which is well known in the recording industry

and manages copyright licenses and royalty payments for musical works.  Richardson checked with the Harry Fox Agency regarding the copyright for Pathways and was told the agency did not own the copyright.  The copyright owner on file at the Copyright Office was still SoftKey Multimedia, as Fox had not yet recorded his assignment.

Despite the uncertainty surrounding the Pathways copyright, Riverdeep and Cash forged ahead with the licensing agreement.  In the agreement, Riverdeep represented that it owned the copyright.  Cash paid $15,000 for the right to manufacture and distribute Pathways and a couple of other titles.  After Cash obtained the license, she informed the current distributor of Pathways that he could no longer distribute the product, because she now owned the rights.  The distributor informed Estelle Cleary, who manages Harry Fox's business affairs.  Cleary informed Fox, who sent a cease and desist letter to Riverdeep in May 2004.  Cleary contacted Cash in June 2004 and told her that Fox owned the rights to Pathways.

Nonetheless, Cash proceeded with modifying Pathways to run on modern computer operating systems and with preparing to market the product.  She hired Wall Street Productions (owned by Richardson) to undertake this project.  She also formed a company, C*Ding LLC.

In the meantime, in the summer of 2004 Plaintiff's attorney was in contact with Riverdeep about the copyright issue.  The details are not clear (the participants in these discussions have not been deposed), but it appears that Riverdeep made a settlement offer to Plaintiff, which Plaintiff ultimately rejected.  Plaintiff contends that Riverdeep led him to believe that Riverdeep sent a "loss of rights" letter to Cash, although Cash denies receiving one. Plaintiff and Riverdeep did not reach any agreement and it is unclear how negotiations were left.

Richardson also spoke to Plaintiff's attorney in June 2004, and was told to expect a

cease and desist letter, although the attorney also said that Plaintiff was not interested in pursuing legal remedies against Cash. For some reason, it does not appear that Plaintiff sent a cease and desist letter to Richardson or Cash at that time.

In August 2004, Richardson emailed attorney Kirsten Mellor at Riverdeep to inquire about the Pathways copyright and the status of negotiations with Harry Fox. Richardson asked how the copyright on the Pathways box should read. Mellor's assistant emailed Richardson back and told him that the copyright should reach "Copyright 2004 Riverdeep Interactive Learning Limited, and its licensors. All rights reserved. Riverdeep, Inc., a Limited Liability Company is the exclusive licensor of C*Ding LLC." Mellor responded to Richardson on September 20, 2004, noting that "the rights to the product do indeed lie in Harry Fox," but that she expected the situation would be amicably resolved. She also told Richardson that Cash "did not need to do anything else."

Richardson and Cash proceeded with the Pathways project. They heard nothing from Harry Fox until sometime after Cash sold her first copy of Pathways in late 2006. Then on March 23, 2007, Plaintiff's counsel contacted Riverdeep with a cease and desist letter regarding Pathways. Mellor responded on April 11, 2007, denying any involvement by Riverdeep. Plaintiff's attorney also sent a cease and desist letter to Cash on May 9, 2007. Cash continued to sell Pathways until she was served with this lawsuit in September 2007.

## LAW AND ANALYSIS

**I.    Plaintiff's Motion to Amend the Complaint**

This case was filed on August 28, 2007. After denying Defendants' motion to dismiss, the court entered a scheduling order on January 23, 2008. The order provides that fact discovery

ends on August 29, 2008, expert discovery ends on December 5, 2008, the final pretrial conference is April 15, 2009, and trial begins May 5, 2009.

Prior to the end of discovery, Plaintiff filed his motion to amend the complaint. Plaintiff seeks to add a contributory (as opposed to direct) copyright claim against all defendants, drop his breach of contract claim, and add a party, Wall Street Productions. Plaintiff asserts that these amendments are prompted by facts he learned in discovery. Riverdeep opposes the addition of a contributory infringement claim against it, arguing that such a claim would be futile. (This claim is not futile and will be discussed as part of the merits of the case, below.) Cash and C*Ding oppose the amendment on the grounds that it is too late and that they would be prejudiced.

The facts do not suggest, however, that Plaintiff has been dilatory in pursuing discovery. The parties have not previously amended the scheduling order and trial is far enough away that it may be possible to keep the original date even with time for additional discovery and the addition of another party. Defendants will not be prejudiced if leave to amend is granted. Pursuant to Fed. R. Civ. P. 15(a)(2), the court should "freely give leave [to amend] when justice so requires." Under the circumstances, the court will grant Plaintiff's motion to amend.

## II.     **Plaintiff's Motion to Extend Discovery**

Plaintiff also seeks an additional thirty days for discovery. In light of the above ruling, the court will grant this request.

## III.    **Riverdeep's Motion to Strike Hearsay Statements**

Riverdeep seeks to strike hearsay statements relied upon by Plaintiff in opposition to Riverdeep's motion for summary judgment (discussed below). Fox asserts that John Wregglesworth of Riverdeep told Fox's counsel, Elisha Prero, that Riverdeep was going to

revoke Barbara Cash's license. Prero reported this to Cleary, who reported it to Fox. Riverdeep objects to the court considering this statement because it is reported second and third hand by Cleary and Fox, as neither Wregglesworth nor Prero have been deposed.

The depositions of Wregglesworth and/or Prero may render this motion moot. Having granted additional time for discovery, allowing for the depositions of Wregglesworth and/or Prero, the court will deny Riverdeep's motion to strike without prejudice.

**IV.** **Cash and C*Ding's Motion for Summary Judgment**

Cash and C*Ding have moved for summary judgment on two grounds: (1) Plaintiff's claim is barred because Cash's license trumps Plaintiff's unrecorded assignment under the Copyright Act; and (2) Plaintiff's claim is barred by laches. As discussed below, the court will deny the motion.

**A.** **Whether Cash's License Prevails over Fox's Unrecorded Transfer**

The Copyright Act provides that transfers copyright ownership may be recorded in the U.S. Copyright Office. 17 U.S.C. § 205. The recording of a copyright gives all others constructive notice of the owner. Id. In general, as between conflicting transfers, the first executed prevails if it is recorded within the time prescribed by the statute. 17 U.S.C. § 205(d). Pursuant to 17 U.S.C. § 205(e), "[a] nonexclusive license, whether recorded or not, prevails over a conflicting transfer of copyright ownership if the license is evidenced by a written instrument signed by the owner of the rights licensed . . . and if . . . the license was taken in good faith before recordation of the transfer and without notice of it." Id. In other words, Cash's non-exclusive license will prevail over Fox's transfer if she took the license in good faith and without notice of Fox's transfer.

It is undisputed that Fox did not record his copyright in <u>Pathways</u> until July 2004, after Riverdeep licensed the work to Cash in February 2004. The question here is whether Cash took her license "without notice" of Fox's ownership interest. For purposes of the Copyright Act, "notice" includes constructive notice (by recordation of the copyright) as well as actual or inquiry notice. <u>See</u> <u>Peer Int'l Corp. v. Latin American Music Corp.</u>, 161 F. Supp.2d 38, 48 (D. P.R. 2001) (citing 3 <u>Nimmer on Copyright</u> § 10.07[A][2].). Cash did not have constructive notice, because Fox did not record his copyright before Cash entered into the license with Riverdeep. Whether she had actual or inquiry notice, however, is a question for the jury.

As mentioned above, the name Harry Fox "came up" during negotiations as the owner of the <u>Pathways</u> work. It is unclear whether Richardson and Cash probed this question sufficiently prior to entering into the license. Richardson checked with the Harry Fox Agency and got a negative response. Did Richardson then attempt to obtain additional information from Riverdeep? What information did Riverdeep have regarding Harry Fox and what was conveyed to Richardson and Cash? What satisfied the parties that they had done a sufficient investigation? Based upon the current record, we do not have a complete picture. Without a complete picture, and with some obvious and unanswered questions, summary judgment is not appropriate as to whether Cash had actual notice or should have reasonably inquired further. <u>See</u> <u>Peer</u>, 161 F. Supp.2d at 48 ("Inquiry or presumed notice is generally a question for a jury that hinges on all the attendant facts.").

**B.     <u>Laches</u>**

Cash also argues that Fox's claim is barred by laches. Laches is "a negligent and unintentional failure to protect one's rights." <u>Chirco v. Crosswinds Communities, Inc.</u>, 474 F.3d

227, 231 (6th Cir. 2007). "A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." Id.

> Laches does not result from a mere lapse of time but from the fact that, during the lapse of time, changed circumstances inequitably work to the disadvantage or prejudice of another if the claim is now to be enforced. By his negligent delay, the plaintiff may have misled the defendant or others into acting on the assumption that the plaintiff has abandoned his claim, or that he acquiesces in the situation, or changed circumstances may make it more difficult to defend against the claim.

Id. (citations omitted). In the copyright context, the Sixth Circuit has sought to restrict the use of laches to bar claims brought within the statute of limitations "to the most compelling of cases." Id.

In Chirco, the Plaintiffs had actual notice that the Defendants were planning to use Plaintiffs' copyrighted design to build condominiums. Plaintiffs "deliberately delayed as those plans were submitted to local officials as part of the permitting process, as ground was broken on the project, as advertisements about the development were disseminated, as construction . . . began" and as homeowners began moving in. Id. at 235. Nonetheless, the Sixth Circuit found that, as to Plaintiff's request for damages and injunctive relief, "we cannot conclude that the defendants were *unduly* prejudiced by the plaintiffs' delay in filing this cause of action." Id. (emphasis in original). However, the court did find that laches barred Plaintiffs claim for the "destruction" of all architectural work that infringed Plaintiffs' copyright, noting that

> In most cases, efforts by a plaintiff to obtain the monetary or injunctive relief authorized by statute within the limitations period provided by the Copyright Act will be allowed to proceed. In those unusual cases, however, when the relief sought will work an *unjust* hardship upon the defendants or innocent third parties, the courts, as a coequal branch of the federal government, must ensure that judgments never envisioned by the legislative drafters are not

-8-

allowed to stand.

Id. at 236 (emphasis in original).

Plaintiff's delay in this case is not nearly as egregious as that of the plaintiffs in Chirco, where the Sixth Circuit found that laches did not bar the plaintiffs' claims for money damages and injunctive relief. In light of Chirco, Cash and C*Ding have not demonstrated that they have been unduly prejudiced by Plaintiff's delay. The court will exercise its discretion in favor of allowing Plaintiff's copyright claim to proceed. See Chirco, 474 F.3d at 231 (standard of review of trial court's resolution of laches question is abuse of discretion).

For these reasons, the court will deny Cash and C*Ding's motion for summary judgment.

### V.     Riverdeep's Motion for Summary Judgment

Riverdeep seeks summary judgment against Plaintiff, asserting that Plaintiff's copyright claim is barred by the statute of limitations. Riverdeep licensed Pathways to Cash on February 16, 2004, and received a cease and desist letter from Fox on May 24, 2004. The statute of limitations on a copyright claim is three years. Fox filed this suit on August 28, 2007.

Riverdeep contends that it did not engage in any infringing acts within the limitations period, because it licensed Pathways more than three years prior to August 28, 2007 (and Fox had knowledge of the license as of May 24, 2004). Plaintiff asserts that Riverdeep engaged in three infringing acts within the limitations period: (1) "reauthorizing" the license agreement and encouraging infringement in September 2004; (2) providing web support for the Pathways software until 2007; and (3) authorizing Cash to mark Pathways with a Riverdeep copyright in August 2004. Additionally, Plaintiff contends that Riverdeep should be estopped from relying

-9-

on the statute of limitations because it lulled Plaintiff into not filing suit.

In order to demonstrate copyright infringement, Plaintiff must establish a violation of one of the five exclusive rights granted to the copyright owner: the right to reproduce, prepare derivative works, distribute copies, perform publicly, or display publicly. See Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 432-33 n.14 (1984) (citing 17 U.S.C. § 106). Plaintiff does not appear to claim that Riverdeep directly infringed his copyright during the limitations period.

Rather, Plaintiff asserts a claim of "contributory infringement" against Riverdeep.[1] Contributory infringement occurs when one, "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." Bridgeport Music, Inc. v. Diamond Time, 371 F.3d 883, 889 (6th Cir. 2004) (citation omitted). See also Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1170 (9th Cir. 2007) (citing Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, 545 U.S. 913 (2005)) (noting that "an actor may be contributorily liable for intentionally encouraging direct infringement if the actor knowingly takes steps that are substantially certain to result in such direct infringement.").

As noted above, Plaintiff alleges three instances of contributory infringement. On August 24, 2004, Riverdeep instructed Richardson to affix its copyright to the Pathways package. Although this may constitute contributory infringement, it is not within the limitations period. Plaintiff also claims that Riverdeep provided "web support" for Pathways. Although it is not clear why Pathways was on Riverdeep's website, it appears that it was left over from when

---

[1] Plaintiff asserts that his original complaint encompasses this claim. Plaintiff seeks, however, to more specifically delineate a contributory infringement claim in his Amended Complaint. As stated above, the court has granted this request.

Riverdeep's predecessor lawfully distributed the product. In any event, as a logical matter, it is unclear how providing technical support once the infringement (distribution and sale) has already occurred "induces, causes or materially contributes" to it. Plaintiff has not pointed to case law that supports this specific argument.

Lastly, Plaintiff contends that Riverdeep engaged in contributory infringement by instructing Richardson that Cash "need not do anything else" in response to Fox's claim of copyright ownership. On September 20, 2004, Richardson emailed Mellor at Riverdeep to inquire about Riverdeep's negotiations with Fox. Richardson asked: "To clarify: Riverdeep is negotiating a royalty with Harry Fox? Please explain how this royalty may be calculated and remitted. . . . I presume Barbara will have to do nothing except that which she is currently obligated to do under her license agreement with Riverdeep." Caixiero Decl. Ex. 13. Mellor responded: "Yes, Riverdeep would indemnify/cover those royalties and no issues or implication for Barbara Cash. Barbara Cash does not need to do anything else. If it becomes necessary for any action there we will let you know asap." Id. Apparently, Riverdeep never informed Richardson or Cash that it did not come to any agreement with Fox, and Richardson and Cash never followed up.

Plaintiff contends that Riverdeep reauthorized the license agreement at this point and encouraged Cash to continue with her plans to distribute Pathways. Mellor's instruction that "Barbara Cash does not need to do anything else" at least raises an issue of fact with respect to whether Riverdeep induced or materially contributed to Cash's infringement of the Pathways copyright. Riverdeep has allegedly engaged in at least one act of contributory infringement during the limitations period; accordingly, the court will deny Riverdeep's motion for summary

-11-

judgment.

## VI. Plaintiff's Motion for a Finding of Spoliation

Plaintiff also seeks a ruling that Riverdeep spoliated evidence. According to Plaintiff, Riverdeep destroyed or failed to preserve evidence that may have revealed more infringing acts during the limitations period. As a sanction, Plaintiff seeks a default judgment against Riverdeep.

Plaintiff contends that Riverdeep should have taken steps to preserve evidence, including emails, once it received Fox's cease and desist letter dated May 27, 2004. State law governs the issue of spoliation of evidence in both federal question and diversity cases. See Beck v. Haik, 377 F.3d 624, 641 (6th Cir. 2004). Under Michigan law, "[e]ven when an action has not been commenced and there is only a potential for litigation, the litigant is under a duty to preserve evidence that it knows or reasonably should know is relevant to the action." Brenner v. Kolk, 226 Mich. App. 149, 162, 573 N.W.2d 65 (1997). The court may sanction a party who fails to preserve evidence "regardless of whether the evidence is lost as a result of a deliberate act or simple negligence, [because] the other party is unfairly prejudiced. . . ." Id. at 160. "An appropriate sanction may be the exclusion of evidence that unfairly prejudices the other party or an instruction to the jury that it may draw an inference adverse to the culpable party from the absence of the evidence." Id. at 161.

It is undisputed that Riverdeep took no steps whatsoever to preserve emails or documents related to Fox's potential claim any time between 2004 and 2007. The facts do not suggest, however, that Riverdeep acted in bad faith or deliberately destroyed evidence. Nonetheless, Riverdeep clearly knew about Fox's potential claim in May 2004 and its failure to preserve

evidence is sanctionable.[2]

Because there has been no showing of bad faith, a default judgment is an unduly harsh sanction. However, the court will instruct the jury that it may presume that any missing documents or categories of documents identified by Plaintiff are unfavorable to Riverdeep.

## VII. Plaintiff's Motion to Disqualify Miller Canfield

Plaintiff has also moved to disqualify Defendants' counsel, Miller Canfield. Plaintiff contends that Miller Canfield cannot properly represent Riverdeep, Cash, and C*Ding because their interests conflict. For example, although Riverdeep is paying Cash and C*Ding's attorney fees, Riverdeep has suggested that it would not indemnify C*Ding. Also, Defendants' testimony conflicts on certain issues, such as whether Riverdeep sent Cash a loss of rights letter.

Defendants assert that Plaintiff has filed this motion to obtain tactical advantage and to harass them. Miller Canfield serves as local counsel to Riverdeep, and lead counsel for Cash and C*Ding. Irwin Schwartz is Riverdeep's lead counsel. Defendants acknowledge that they may have conflicting interests regarding indemnification, but state that the issue is not yet ripe. For the purposes of this litigation, Defendants contend, they are united in interest and have all consented to have Miller Canfield represent them. Further, should litigation between Riverdeep and Cash/C*Ding regarding indemnification arise, Miller Canfield has informed them that it would not participate as counsel.

Under the Michigan Rules of Professional Conduct, "[r]esolving questions of conflict of

---

[2] Riverdeep asserts that it thought matters had worked out to Fox's satisfaction – because they did not hear from him. However, Riverdeep does not claim that it preserved documents for a time period, then destroyed them after they thought Fox lost interest. Rather, they never attempted to preserve any documents or emails.

interest is primarily the responsibility of the lawyer undertaking the representation." M.R.P.C. 1.7 cmt. The general rule regarding conflicts is as follows:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
> > (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
> > (2) each client consents after consultation.
>
> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
> > (1) the lawyer reasonably believes the representation will not be adversely affected; and
> > (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

M.R.P.C. 1.7.

An attorney who violates this rule may be disqualified as counsel; however, disqualification is an "extreme sanction" that the court should employ only when there is a "reasonable possibility that some specifically identifiable impropriety" actually occurred, and where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain the counsel of his choice. DeBiasi v. Charter County of Wayne, 284 F. Supp.2d 760, 770 (E.D. Mich. 2003) (Rosen, J.) (citations omitted). Opposing counsel may properly raise the question when a conflict is such that it calls "into question the fair or efficient administration of justice." M.R.P.C. 1.7 cmt. "Such an objection should be viewed with caution however, for it can be misused as a technique of harassment." Id. See also Manning v. Waring, Cox, James, Sklar & Allen, 849 F.2d 222, 224 (6th Cir. 1988)

("Unquestionably, the ability to deny one's opponent the services of capable counsel, is a potent weapon. Confronted with such a motion, courts must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of his choice.").

The court believes that the extreme sanction of disqualification is not warranted at this time. Any issue regarding indemnification has not yet materialized and is unlikely to arise in this litigation. Miller Canfield represents that its clients have waived the potential conflict after consultation. Although the rules do not distinguish between local and lead counsel, the fact that the potentially adverse defendants each have their own lead counsel creates a situation where the "risk of adverse effect is minimal" in this litigation. M.R.P.C. 1.7 cmt.

Accordingly, the court will deny Plaintiff's motion to disqualify Miller Canfield.

**ORDER**

IT IS HEREBY ORDERED that Plaintiff's motion to amend is GRANTED; Plaintiff's motion to extend discovery is GRANTED; Riverdeep's motion to strike hearsay statements is DENIED WITHOUT PREJUDICE; Cash and C*Ding's motion for summary judgment is DENIED; Riverdeep's motion for summary judgment is DENIED; Plaintiff's motion for a finding of spoliation is GRANTED IN PART; and Plaintiff's motion to disqualify Miller Canfield is DENIED, consistent with this opinion.

s/John Corbett O'Meara
United States District Judge

Date: December 16, 2008


I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, December 16, 2008, by electronic and/or ordinary mail.

s/William Barkholz
Case Manager